IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| v. | ) | |
| | ) | |
| | ) | **No. 20 CR 2020** |
| DENNIS ELONGE, | ) | |
| | ) | |
| **Defendant.** | ) | |

### MEMORANDUM OPINION AND ORDER

The defendant, who has been charged with one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), has moved for pretrial release. [Dkt. #47]. At the time he allegedly possessed the five guns involved in this case, he was a convicted felon, having less than two years earlier been convicted of armed robbery. [Dkt. #55 at 4]. The Motion, which is opposed by the government, cites no cases and largely consists of generalities regarding 18 U.S.C. § 3142, which, in the abstract, no one would dispute.  But "general propositions do not decide concrete cases." *Lochner v. New York*, 198 U.S. 45, 76 (1905)(Holmes, J., dissenting).  Quite the contrary, the facts of the case are critical to analysis. *See Mays v. Dart*, 974 F.3d 810, 819 (7th Cir. 2020). *Accord Kingsley v. Hendrickson*, _U.S._, 135 S.Ct. 2466, 2473 (2015)("The first step in the resolution of *any* legal problem is ascertaining the factual background and sifting through the facts with an eye to the legally relevant.")(emphasis supplied). *Cf. United States v. Swallers*, 897 F.3d 875 (7th Cir. 2018). Justice Jackson has perhaps said it best: "Unless we are to reach judgments as did Plato's men who were chained in a cave so that they saw nothing but shadows we should consider the facts of [this] case at least as an hypothesis to test the validity of the conclusions. . . ." *Douglas v. City of Jeanette*, 319 U.S. 157, 166 (1943) (Jackson, J., dissenting).

The Motion for Release largely ignores any facts relating to the defendant and his arrest and thus, improperly fails to give sufficient weight to his *suitability* under the Bail Reform Act to be placed on bond pending trial. In place of careful analysis, the Motion ignores or carefully minimizes the circumstances surrounding the arrest and the defendant's background and history. There is merely the conclusion that appropriate conditions of bond can be fashioned and that Mr. Elonge is not likely to flee or pose a danger to the community if released on bond. [Dkt. #47 at 2]. Unfortunately, that tendentious conclusion is unsupported by the facts of the case and is contrary to the perceptive and sensitive assessment of Pre-trial Services, which has recommended detention.

The Motion begins by positing that statistics show that occurrences of flight or new criminal conduct while on bond are rare. But unfortunately, the Motion's reliance on non-specific statistics to conclude that only a percentage of released defendants commit some form of pretrial offense is inapplicable here for two obvious reasons. First, the statistics are eleven years old and are general in nature. Second, the statistical population of released defendants who engage in some sort of pretrial misconduct does not presumptively exclude Mr. Elonge or anyone else. The inquiry required by the Bail Reform Act is necessarily individualized and thus contrary to any attempt to make decision-making a function of ten year old generalized statistics. To assert, as does the defendant, that "it appears that our courts may over estimate the risk of defendants fleeing or posing a danger to the community if released" [Dkt. #47 at 2, ¶ 3] is neither compelling nor persuasive in any given case. Yet, cases are statutorily required to be determined by the applicable facts and not by tendentious theorizing based upon non-specific generalities.

The Motion for Pretrial Release is also based on the defendant's statement that the global pandemic requires release on bond for the protection of Mr. Elonge's health. No case or law review

article is cited in support of the claim that any given defendant must be released on bond because of the pandemic. [Dkt. #47 at 2, ¶¶ 4-5]. When asked whether he could refer the court to a single case in which bond had been granted because of the general concerns about inmates' health stemming from the existence of the Covid pandemic, counsel for defendant was unable to do so. Perhaps, were the conditions surrounding Mr. Elonge's present incarceration different, the Covid threat might stand on a very different footing. But that is not the case here, and the medical risks posed by Covid-19 are not a basis in this case for concluding that Mr. Elonge should be released on bond pending trial.

Finally, counsel for the defendant, while conceding that he had no case that would require that Mr. Elonge be released on bond because of the Covid-19 pandemic, asserted that he has been counsel in a number of cases "far worse than this one" in which bond has been granted. Of course, none were identified, and unfortunately, as the Seventh Circuit has stressed "saying so doesn't make it so...." *United States v. 5443 Suffield Terrace, Skokie, Ill.,* 607 F.3d 504, 510 (7th Cir.2010);*Madlock v. WEC Energy Group, Inc.*, 885 F.3d 465, 473 (7th Cir. 2018). *See also Illinois Republican Party v. Pritzker*, 973 F.3d 760, 770 (7th Cir. 2020); *Donald J. Trump for President, Inc. v. Secy of Pennsylvania*, 830 F. Appx 377, 381 (3d Cir. 2020)("But calling an election unfair does not make it so. Charges require specific allegations and then proof. We have neither here.").

By contrast, the government's Response to the defendant's Motion [Dkt. #55] dealt with the circumstances and the specifics of the instant case, as well as the specific components of the Bail Reform Act and its application here. The Response details – rather than ignores – the singularly troubling circumstances of the defendant's arrest, which unearthed five guns in the car in his possession on the night he was arrested – while on parole for a state charge. At that time, he was observed handling a loaded gun in a car that was double parked. A subsequent search of the car

revealed four other guns. The circumstances are detailed in the government's response to the motion

for release. [Dkt. #55 at 4]. In short, one of the guns had been modified from a semi-automatic to an

automatic. Two of the guns were loaded and had a laser aiming device. The government's conclusion

that the nature and circumstances of the offense are "serious" is somewhat of an understatement.

[Dkt. #55 at 4]. The government has shown by clear and convincing evidence that no condition or set of

conditions will reasonably assure the safety of the community if the defendant were released on bond. And

it has shown by a preponderance of the evidence that no condition or set of conditions would reasonably

assure the defendant's appearance at trial in the instant case if bond were granted. Not surprisingly, Pre-Trial

Services, after careful examination – not abstract and tendentious theorizing – has concluded that the

defendant should be incarcerated pending trial in this case.

Insisting that release on bond with electronic monitoring at his father's home would satisfy the

requirements of 18 U.S.C. § 3142, the defendant has insisted that he should be allowed to reside at his

father's home and that certain conditions, including electronic monitoring, will reasonably assure his

attendance at trial, as well as the safety of the community. But our concern is not with tendentious theorizing

divorced from the facts of the case, our concern is, and must be, with careful analysis based on the

requirements of the Bail Reform Act and the facts of this case as thus far revealed. During the course of

discussion today it was learned that the defendant's brother is already on electronic monitoring at his father's

home in connection with a state charge of forgery. I agree with the government's assessment that these are

not appropriate conditions under the Bail Reform Act into which the defendant ought be released. For all

these reasons, the defendant's Motion for Pretrial Release [Dkt. #47] is denied.

ENTERED: _____

UNITED STATES MAGISTRATE JUDGE

**DATE:** 3/30/21

4